**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. . _____

VICTOR J. COOK, individually and as the
Current Members' Representative of
AltPay Holdings, LLC,

    Plaintiffs,

vs.                                                                JURY TRIAL DEMANDED

COINSQUARE LTD.,

    Defendant.
_____/

**COMPLAINT**

Victor J. Cook, individually and as the Current Members' Representative of AltPay Holdings, LLC (as defined herein) ("Plaintiffs"), for their Complaint against Coinsquare Ltd. ("Coinsquare"), state as follows:

**INTRODUCTION**

1. This dispute involves Coinsquare's fraudulent misrepresentations or omissions to Plaintiffs, the Class B members of AltPay Holdings, LLC ("AltPay"), that caused them to enter into a series of agreements and related transactions whereby, among other things, they obtained the right to exchange their membership interests in AltPay for common shares of Coinsquare.

2. Unbeknownst to Plaintiffs at the time they entered into these transactions, Coinsquare and its then key executives were engaged in illegal conduct that, in 2020, led to Coinsquare entering into a settlement agreement with the Ontario Securities Commission that, as explained below, related to Coinsquare's market manipulation, misleading statements to investors, and a reprisal against an internal whistleblower.

1

## PARTIES

3. Victor J. Cook ("Cook") is an individual residing in West Palm Beach, Florida.

4. Cook is the Chief Technology Officer of AltPay, and pursuant to the "Contribution Agreement dated as of July 2, 2019 among Coinsquare ATM Network Ltd. and AltPay Holdings, LLC and the Other Parties Named Herein" (the "Contribution Agreement"), Cook is the "Current Members' Representative" authorized to take certain action on behalf of the "Current Members" (those persons listed in Annex I to the Contribution Agreement).

5. Defendant Coinsquare is a Canadian corporation based in Toronto, Canada. Coinsquare operates a crypto asset trading platform that facilitates the buying and selling of crypto assets, including bitcoin, litecoin and ether. Coinsquare is a publicly-traded company listed on the Toronto Stock Exchange.

## JURISDICTION AND VENUE

6. The claims herein involve, in part, domestic transactions involving the conversion of Plaintiffs' membership units in AltPay, a Florida limited liability company, to non-voting Class B Units, which included a right to exchange those membership units for shares of Coinsquare.

7. The claims herein are brought pursuant to the Federal Securities Act of 1933 ("1933 Act"), and jurisdiction is conferred by § 27 of the Federal Securities Exchange Act of 1934 ("1934 Act"), and 28 U.S.C. § 1331. The claims asserted herein arise under § 10(b) of the 1934 Act and SEC Rule 10b-5.

8. This Court has jurisdiction over Coinsquare because it is a corporation that has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to § 27 of the 1934 Act and 28 U.S.C. § 1391, as many of the false and misleading statements alleged in this Complaint were made or issued in this District and the transactions at issue occurred, in part, in this District.

10. In connection with the acts alleged in this complaint, Coinsquare, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mail and interstate telephone communication.

## FACTUAL ALLEGATIONS

### The Coinsquare/AltPay Transaction

11. AltPay Holdings LLC ("AltPay") is a Florida limited liability company in which Cook and the other Current Members are members.

12. On July 2, 2019, Coinsquare entered into a complex transaction with AltPay and Plaintiffs whereby, among other things, AltPay issued 136,183 new Class A Units in AltPay to Coinsquare, and converted Plaintiffs' membership interests in AltPay to non-voting Class B Units. As part of this transaction, Plaintiffs received the right to exchange their Class B Units into an equal number of Coinsquare common shares (the "Exchange Rights").

13. The transaction included three interrelated agreements – an Investor Agreement, the Contribution Agreement (entered into by a wholly-owned U.S. Coinsquare subsidiary), and a Third Amended and Restated Operating Agreement of AltPay ("Operating Agreement") (collectively, the "Transaction Documents").

14. The Investor Agreement specifically notes that "the covenants and agreements of the parties hereunder were a material inducement for the other party to enter into the Contribution Agreement and the AltPay Restated Operating Agreement (as defined below) and to perform their obligations thereunder." (Investor Agreement, second WHEREAS clause.)

15. In connection with its granting of the Exchange Rights, Coinsquare issued a Form D, which it used to file a notice of an exempt offering of securities with the U.S. Securities and Exchange Commission.

16. Transfer of the Exchange Rights to Plaintiffs occurred, in relevant part, in the U.S.

**Coinsquare's Fraudulent Representations and Omissions to Plaintiffs.**

17. As part of its due diligence in connection with this transaction, AltPay and Plaintiffs requested certain information from Coinsquare.

18. For example, AltPay requested and received data regarding the trading volume that occurred on the Coinsquare platform. Coinsquare provided certain information that, as explained below, failed to disclose that it was engaging in illegal manipulation of trading volume on the Coinsquare platform. Coinsquare also otherwise disclosed trading volume data that it knew was false or did not accurately represent the true trading volume on the Coinsquare platform.

19. Additionally, in the spring of 2019, Coinsquare's then-CEO Cole Diamond (who was later forced to step down by regulatory authorities) told Cook in a telephone call that Coinsquare's trading volume was in the top 100 of worldwide exchanges. As explained below, this was false, as Coinsquare's trading volume was illegally inflated through a process known as "wash trading."[1]

20. At no time during the discussions that led up to the transaction did Coinsquare or any of its representatives disclose that Coinsquare was engaged in illegal and other wrongful

---

[1] Wash trading is a form of market manipulation in which the same financial instrument is simultaneously sold and bought to create misleading, artificial volume in the marketplace.

conduct that either was or would soon become the subject of an investigation by the Ontario Securities Commission.

21. In fact, Coinsquare made numerous representations and warranties to the contrary.

22. For example, in the Investor Agreement to which Plaintiffs and Coinsquare are parties, Coinsquare made the following representation to Plaintiffs:

> "[S]ince December 31, 2018, the Company has conducted the Business only in the Ordinary Course of Business, and without limiting the generality of the foregoing there has not been . . . any change, condition, event or occurrence that has had or would reasonably be expected to have. individually or in the aggregate, a Material Adverse Effect."

(Investor Agreement § 8.7(a).)

### Coinsquare Admits to Violations of Ontario Securities Laws and Other Unlawful Conduct.

23. On July 21, 2020, the Ontario Securities Commission ("OSC") announced a Settlement Agreement with Coinsquare and three of its executives: Cole Diamond, Virgile Rostand and Felix Mazer (the "OSC Settlement").

24. The OSC Press Release announcing the OSC Settlement includes the following quote from the Director of the Enforcement Branch:

> "Despite several employees raising concerns about inflated trading volumes, Coinsquare not only stuck with the practice, but lied to investors about it and retaliated against a whistleblower."

25. A true and correct copy of the 50-page OSC Settlement is attached hereto as Exhibit A.

26. The OSC Settlement includes the following admissions of wrongful conduct:

(a) Coinsquare admits that it engaged in market manipulation through the reporting of inflated trading volumes;

(b) Coinsquare admits that it misled its clients about trading volumes and Diamond and Rostand admit to authorizing, permitting or acquiescing in this conduct; and

  (c) Coinsquare admits to taking a reprisal against an internal whistleblower and Diamond admits to authorizing, permitting or acquiescing in this conduct.

(OSC Settlement ¶ 3.)

27. The OSC Settlement states that "[b]etween July 2018 and December 2019, Coinsquare inflated its trading volumes by reporting fake or 'wash' trades representing over 90% of its reported trading volume." (*Id.* ¶ 4.)

28. It further states that "Diamond, Coinsquare's CEO, directed that Coinsquare inflate its reported trading volumes. At Diamond's direction, [Virgile] Rostand, Coinsquare's founder and President, wrote the algorithm to inflate Coinsquare's trading volume." (*Id.* ¶ 5.)

29. "Despite several Coinsquare employees raising concerns about inflated trading volumes, Coinsquare stuck with the practice." (*Id.* ¶ 6.)

30. As explained in the OSC Settlement, this led to the following:

  (a) Coinsquare misleading clients and members of the public who raised suspicions that Coinsquare was reporting inflated trading volumes;

  (b) Coinsquare concealing the inflated trading volumes from Staff; and

  (c) Coinsquare taking a reprisal against an employee whistleblower for repeatedly raising concerns internally about Coinsquare inflating its reported trading volumes.

(*Id.*)

31. The OSC Settlement states that:

  Coinsquare inflated the trading volumes on the Coinsquare Platform through reporting "wash" trades representing over 90% of its reported trading volume between July 2018 and December 2019. Diamond directed that Coinsquare engage in this activity and Rostand developed and implemented the algorithm that made it happen. Coinsquare misled clients about its trading volumes including when questioned about the suspicious trading activity.

(*Id.* ¶ 14.)

32. The OSC Settlement further states that:

> Coinsquare made misleading statements, including in responses to posts on Reddit.com about the significant increase in reported trading volumes on the Coinsquare Platform.

(*Id.* ¶ 20.)

33. As part of the OSC Settlement, Diamond and Rostand agreed to resign from their positions at Coinsquare and paid administrative penalties of $1 million and $900,000, respectively. The OSC Settlement also banned Diamond and Rostand from acting as registrants and directors or officers of a registrant for three years.

34. The OSC Settlement further banned them from acting as directors or officers of other market participants for three and two years, respectively. The bans further prohibit Diamond and Rostand from influencing the management of the Coinsquare platform for at least three years.

35. The OSC Settlement explains that:

> In early 2019, Coinsquare Capital Markets submitted applications for registration as an investment dealer and to operate an Alternative Trading System with the Commission and the Investment Industry Regulatory Organization of Canada (IIROC). Coinsquare failed to disclose that it was engaging in wash trading to Staff, including during an on-site pre-registration review at Coinsquare's offices between March 15 and March 19, 2019.

(*Id.* ¶¶ 26-27.)

36. The OSC Settlement found as follows:

> By inflating the reported trading volumes on the Coinsquare Platform, Coinsquare engaged in a course of conduct that it knew or reasonably ought to have known resulted in or contributed to a misleading appearance of trading activity in a security, derivative and/or underlying interest of a derivative, contrary to paragraph 126.1(1)(a) of the [Ontario Securities] Act.

(*Id.* ¶ 33.)

37. The OSC Settlement further found the following:

>   Coinsquare falsely represented that this trading volume was an accurate reflection of the trading activity on the Coinsquare Platform. In doing so, Coinsquare made statements about its trading volumes that were untrue and omitted information necessary to prevent the statements from being false or misleading.

(*Id.* ¶ 34.)

38. The OSC Settlement explained that "[t]he trading volume on a platform is a factor that a reasonable investor would consider relevant in deciding whether to enter into or maintain a trading relationship." (*Id.* ¶ 36.)

39. The OSC Settlement also found that "between December 2014 and December 2019, Coinsquare reported additional noneconomic, internal trades valued at approximately 112,000 bitcoins." (*Id.* ¶ 52.) "These trades had no economic substance and involved no change in beneficial or legal ownership over any assets." (*Id.*)

40. The OSC Settlement includes other substantial relief against Coinsquare and its then-executives, including substantial monetary payments and certain bans regarding its then-executives.

### Coinsquare's Wrongful Conduct

41. The false representations or omissions described above were materially false and misleading, and relied on by Plaintiffs in deciding to obtain the Exchange Rights to common shares of Coinsquare.

42. With respect to Coinsquare's omissions, prior to entering into the Transaction Documents, Coinsquare should have disclosed that it engaged in the unlawful conduct set forth in the OSC Settlement, much of which occurred prior to July 2, 2019, the date on which the parties entered into the Transaction Documents.

43. The facts that Coinsquare should have disclosed, but failed to disclose, to Plaintiffs prior to entering into the Transaction Documents were not publicly available or otherwise reasonably ascertainable by Plaintiffs.

44. Coinsquare acted with scienter in that Coinsquare knew that its statements or omissions were materially false and misleading at the time they were made; Coinsquare knew that such statements or omissions would be directly material or relevant to Plaintiffs; and Coinsquare knowingly and substantially participated or acquiesced in the making of such statements or omissions.

45. On or about July 2, 2019, Cole Diamond executed the Investor Agreement as CEO of Coinsquare Ltd. and executed the Contribution Agreement as CEO of Coinsquare ATM Network Ltd.

46. Coinsquare made these false representations or omissions during the same time Coinsquare was knowingly engaged in illegal market manipulation and wash trading.

47. Coinsquare had the motive and opportunity to commit fraud, as confirmed by the OSC Settlement.

48. A reasonable person would attach importance to the omission of this information in determining whether to obtain a right to shares of Coinsquare.

49. Coinsquare was of course aware of its wrongful conduct detailed and admitted in the OSC Settlement, and in failing to disclose this information, acted with the intent to deceive, manipulate, or defraud, or alternatively with severe recklessness.

**Plaintiffs' Losses**

50. In connection with their Exchange Rights, Plaintiffs had a right to exchange their AltPay units for an equal number of shares in Coinsquare.

51. Plaintiffs were entitled to exchange their AltPay units for a greater number of shares upon the achievement of certain milestones, which have been deemed met.

52. At the time the parties entered into the Transaction Documents, Coinsqaure provided AltPay with a capitalization table that showed 28,750,763 fully diluted Coinsquare shares. At that time, the parties assigned an agreed value to Coinsquare shares of USD $15.22 per share. This would result in a valuation of Coinsquare of $446,211,841.76.

53. As a direct result of Coinsquare's conduct as described in the OSC Settlement, which conduct Coinsquare was aware of at the time the parties entered into the Transaction Documents, Coinsquare's valuation has fallen by approximately $200 million. As result, the Exchange Rights have lost substantial value.

54. Had Coinsquare disclosed its misconduct prior to the Transaction Documents, and not made false misrepresentations or omissions, Plaintiffs would not have entered into the Transaction Documents.

55. Additionally, as a direct consequence of AltPay's connection with Coinsquare, AltPay has lost customers. Certain customers have informed AltPay that they will no longer do business with AltPay due to its connection with Coinsquare. As a result, Plaintiffs' existing units in AltPay have lost substantial value.

56. These losses are presently in the tens of millions of dollars, and are ongoing.

## COUNT I
### Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder

57. Plaintiffs hereby incorporate Paragraphs 1 through 56 as if fully set forth herein.

58. Coinsquare made and disseminated the false statements or omissions specified above, which they knew or deliberately disregarded were misleading in that they contained

misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

59. Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities or rights to acquire those securities.

60. Plaintiffs suffered damages in that, in reliance on the integrity of the market and Coinsquare's false representations and omissions, they acquired the Exchange Rights at an artificially inflated cost. Plaintiffs would not have entered into the Transaction Documents and acquired the Exchange Rights if they had been aware that the cost of doing so was artificially and falsely inflated by Coinsquare's false representations or omissions.

61. Additionally, as a direct result of Plaintiffs' false representations or omissions, the value of their Exchange Rights has substantially decreased, and Plaintiffs have suffered additional damage as a direct consequence of Coinsquare's fraudulent representations and omissions.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor as follows:

(a) Awarding Plaintiffs actual and consequential damages in an amount to be proven at trial;

(b) Awarding pre- and post-judgment interest, attorney's fees, and costs of suit as permitted by law; and

(c) Awarding Plaintiffs all further relief this Court deems just.

Dated: April 9, 2021

Respectfully submitted,

By: *Gavin C. Gaukroger*
Charles H. Lichtman (Fla. Bar No. 501050)
clichtman@bergersingerman.com
Gavin C. Gaukroger (Fla. Bar No. 76849)
ggaukroger@bergersingerman.com
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Telephone: (954) 525-9900

and

Steven P. Blonder (*Pro Hac Vice Pending*)
sblonder@muchlaw.com
Jason M. Rosenthal (*Pro Hac Vice Pending*)
jrosenthal@muchlaw.com
MUCH SHELIST, P.C.
191 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
Telephone: (312) 521-2000

*Attorneys for Plaintiffs*